Argued and submitted May 28, affirmed November 19, 1986

# NORTH SUPPLY COMPANY,
*Appellant,*

*v.*

# ALLCO FINANCIAL SERVICES et al,
*Defendants,*

# UNITED STATES NATIONAL BANK OF OREGON
*Respondent.*

(A8206-03348; CA A36239)

728 P2d 912

S. Ward Greene, Portland, argued the cause for appellant. With him on the briefs were Brent G. Summers and Greene & Markley, P.C., Portland.

Gregory A. Chaimov, Portland, argued the cause for respondent. With him on the brief were Peter C. Richter and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiff appeals a judgment for defendant United States National Bank of Oregon (Bank) in a non-jury trial. Plaintiff sued Bank for $20,000 of the purchase price of telephone equipment that plaintiff sold to Independent Communications Service Co., Ltd. (ICSC). ICSC installed the equipment in the McLean Clinic in Oregon City. Washington Leasing Corporation, formerly Affiliated Leasing Corporation (Affiliated), financed the cost of the equipment and installation under an equipment lease with the clinic. Bank received $20,000 from Affiliated under its security agreement covering ICSC's accounts receivable.[1] ICSC is not a party to the action. We affirm.

Plaintiff acknowledges that we must affirm the judgment if there is substantial evidence in the record to support it and that we must consider the evidence and all reasonable inferences from it in the light most favorable to Bank. Bank had loaned money to ICSC and, as security, held a security interest in all of its present and future accounts receivable. Its security agreement, dated June 30, 1980, covered:

"All accounts, instruments, drafts, acceptances and other forms of receivables * * * and all rights of [ICSC] earned or to be earned under contracts to sell goods or render services * * * and in the proceeds of all of the foregoing."

It perfected its security interest on July 7, 1980.

In August, 1981, Allco Financial Services (Allco), a broker and the agent for Affiliated,[2] solicited ICSC to obtain and install telephone equipment in the clinic. ICSC asked plaintiff to sell the equipment to it. Plaintiff agreed, providing that ICSC would reduce its delinquent account with it by $40,000. Plaintiff demanded $20,000 in advance, which it received from the clinic, and a letter from Allco stating that plaintiff would receive an additional $20,000 when ICSC had completed the installation. By letter dated September 14,

---

[1] Affiliated and Allco Financial Services were also defendants. The judgment provided for dismissal with prejudice of plaintiff's claims against them. Plaintiff does not appeal as to them.

[2] The parties and the court treated Allco and Affiliated as one entity.

1981, ICSC authorized Allco to pay $20,000 directly to plaintiff when it received the invoice from ICSC. Allco, for Affiliated, notified plaintiff by letter dated September 18, 1981, of ICSC's authorization:

> "Please be informed upon funding of the lease for the Interconnect System being installed at the McLean, Clinic, P.C., Oregon City, Oregon, $20,000 will be paid directly to your company as the wholesaler."

On September 22, ICSC billed Affiliated $66,860 for the equipment and installation costs. The invoices included ICSC's markup on the equipment. It instructed Affiliated to "pay the proceeds of our invoices" by paying $20,000 to plaintiff, $33,430 to the clinic to reimburse it for its advances and the balance of $13,430 to ICSC for the cost of installation.

On September 30, 1981, plaintiff began delivering the equipment to ICSC and billed it on October 1, 1981, but did not retain a purchase money security interest in the equipment. *See* ORS 79.1070(1); *see also* ORS 79.3120(3), (4).[3] On October 26, 1981, ICSC told Bank that it expected to receive proceeds from Affiliated for the clinic equipment and installation and that it had authorized Affiliated to pay $20,000 to plaintiff. Bank notified Affiliated of its security interest and requested that it forward all proceeds payable to ICSC. Affiliated sent $33,430 to Bank, which it applied toward ICSC's delinquent obligations. ICSC later filed bankruptcy, and plaintiff filed this action for $20,000.

The court found that Affiliated was the account debtor of ICSC, that there was no contract of any kind between plaintiff and Affiliated, that plaintiff was a general creditor of ICSC, that Bank had a perfected security interest in the account between ICSC and Affiliated and that, therefore, Bank prevailed.[4]

---

[3] ORS 79.3120 governs priorities among conflicting security interests in the same collateral.

[4] The record contains the following oral findings of the court:

"First off, the Commercial Code says perfected. You've got two innocent creditors. One is a general creditor, and one has a perfected security interest. It is superior, and I don't think that I am supposed to go into a case-by-case analysis in that type of situation. The real question is what is the contractual relationship between the parties. I'm going to refer to Allco and Affiliated as the leasing company, and I don't think there is any contract between the leasing company and North Supply.

Plaintiffs' fundamental position, set out in its first three assignments of error, is that the court erred in finding that Bank's security interest "attached" to $20,000. *See* ORS 79.2030. The court did not expressly find that ICSC had rights in the collateral to which Bank's security interest attached, but that finding is implicit in its express findings. There is also no dispute but that ICSC gave a security agreement in its present and future accounts receivable to Bank and that Bank gave value to ICSC in the form of loans. *See* ORS 79.2030(1)(a) and (b).[5]

Plaintiff contends, however, that Bank's security interest is not enforceable with respect to the $20,000 and did not attach to it, because the provision of ORS 79.2030(1)(c) that requires that a debtor have "rights in the collateral" was not satisfied. It argues that ICSC had an account receivable

---

The leasing company owed ICSC on the invoices for the goods and the labor was supplied to them. As far as the letters saying that they are going to pay North Supply, that is merely an accommodation as far as I can see it. * * * It is clear that the leasing company regarded its principal creditor as ICSC. * * * I conclude that Allco or Affiliated would have gone ahead and paid the bank regardless of whether there had been a statement that North Supply was going to be paid or not. * * * Their concern was to be sure that ICSC got paid, so that their obligation was satisfied and that was all their obligation was. * * * I find the bank is an innocent creditor and North Supply is an innocent creditor. The Commercial Code is clearly designated to take care of that situation. The bank had a perfected security interest, and their interest prevails."

[5] ORS 79.2030, in pertinent part, provides:

"(1) Subject to the provisions of ORS 74.2080 on the security interest of a collecting bank, ORS 78.3210 on security interests in securities and ORS 79.1130 on a security interest arising under ORS 72.1010 to 72.7250, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

"(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned;

"(b) Value has been given; and

"(c) The debtor has rights in the collateral.

"(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) of this section have taken place unless explicit agreement postpones the time of attaching.

"(3) Unless otherwise agreed a security agreement gives the secured party the rights to proceeds provided by ORS 79.3060."

from Affiliated of only $13,430, the cost of installation. It asserts, contrary to the court's finding, that the September 18, 1981, letter shows that it had a contract to sell the equipment to Affiliated. It reasons that, because of that contract, ICSC never acquired a right to payment of the $20,000 and that, therefore, Bank's security interest could not "attach" to that collateral. Bank responds that there is evidence in the record to support the court's finding that ICSC had rights in the $20,000 to which Bank's security interest attached and that it prevails, because it alone had a perfected security interest.

■ Substantial evidence supports the court's finding that there was no contract for sale of the equipment between Affiliated and plaintiff. The letter dated September 18, 1981, that advised plaintiff of ICSC's authorization did not create a contract. It merely authorized Affiliated to pay the proceeds of ICSC's account to plaintiff.[6]

■ Moreover, substantial evidence supports the conclusion that an account for the cost of the equipment and its installation existed between ICSC and Affiliated at the time when ICSC authorized Affiliated to pay plaintiff directly.[7] Under ORS 79.1060(1) an "account" is

"any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance."

*See also* White and Summers, *Uniform Commercial Code* 917 (2d ed 1980): "A debtor can have rights in an account for purposes of [ORS 79.2030(1)(c)] even though it is not yet earned." There is substantial evidence that before plaintiff had delivered the equipment to ICSC and installed it in the clinic, ICSC had a contract with the clinic to provide and install the equipment and that Affiliated, as the equipment

---

[6] Plaintiff also asserts that the court erred in admitting evidence that the broker did not intend that the September 18, 1981, letter create an agreement between it and plaintiff. The court did not err. *See Kabil Developments Corp. v. Mynot,* 279 Or 151, 566 P2d 505 (1977).

[7] Plaintiff also argues promissory estoppel: that Allco's September 18, 1981, letter represents a promise to pay ICSC $20,000 upon which plaintiff detrimentally relied when it shipped the equipment. There is substantial evidence, however, to support the court's finding that the letter from Allco to plaintiff did not contain a promise to pay. Moreover, any promise made to plaintiff after the account came into existence could not affect Bank's rights.

financier, had agreed to pay ICSC for the cost of that equipment and installation. ICSC had a right to payment from Affiliated for the goods it later sold and installed and demonstrated the existence of that right when it authorized Affiliated to disburse in accordance with its letter of September 14, 1981.[8] The Bank's perfected security interest covered and attached to the account—it had rights in the collateral—and it prevails.

Affirmed.

---

[8] In its reply brief, plaintiff argues that Article 9 of the Uniform Commercial Code does not apply at all, because ICSC's authorization to pay plaintiff directly was "a transfer of a right to a payment under a contract to an assignee, [i.e., plaintiff], who [was] also to do the performance under the contract." ORS 79.1040. The argument is not persuasive. Even if plaintiff were the assignee of a right to payment under a contract between ICSC and Affiliated, it was not the party who was to perform under that contract.